J-S12036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR YAN | : | |
| | : | |
| Appellant | : | No. 2082 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004159-2019

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED MAY 02, 2024**

Appellant, Victor Yan, appeals *nunc pro tunc* from the May 12, 2021 judgment of sentence of an aggregate term of 26½ to 53 years' incarceration, imposed after he entered a non-negotiated guilty plea to third-degree murder, conspiracy to commit murder, possessing an instrument of crime (PIC), and recklessly endangering another person (REAP). Appellant solely challenges the discretionary aspects of his sentence on appeal. After careful review, we affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

> On October 14, 2018, Brett Berdini, "decedent," was out with his girlfriend and some friends in the Chinatown neighborhood of Philadelphia, PA. At approximately 2:00 a.m., the couple decided to head home. The couple went to the area of 1033 Race Street, where they prepared to call for an Uber. Decedent crossed the street and walked in front of a vehicle driving down the street. The driver exited his vehicle and had a brief argument with

decedent. Decedent's girlfriend tried to break up the argument. The two men stopped arguing, and decedent and his girlfriend started to walk away while the driver got back into his vehicle and drove away.

As the couple was walking away, a group of eleven (11) individuals, including Appellant, surrounded them. The group formed a semi-circle around the couple, who had their backs against a wall with no escape route. Appellant then punched decedent in the face. The group then violently attacked the couple. The fight spilled out into the middle of the street, where the group continued to grab, punch, kick, and stomp on decedent while he was on the ground. Shortly thereafter, four (4) of the group members left the fight; the other members, including Appellant, continued the fight.

Decedent's girlfriend tried to help him, but two (2) female group members attacked her. Decedent pushed one (1) of the females away from his girlfriend. Appellant then briefly walked away from the fight, but then returned carrying a knife. While the rest of the group continued to punch, kick, and stomp on decedent, Appellant stabbed decedent twice in the chest.

The fight broke up after the stabbing and the group fled the crime scene. Decedent was transported to the hospital, where he died three (3) days later.

A post-mortem examination was conducted on the decedent's remains by Dr. Daniel Brown, M.D., of the Philadelphia Office of the Medical Examiner. Dr. Brown is a doctor in the field of forensic pathology, and he made the following findings: the decedent suffered stab wounds to his torso and multiple blunt impact injuries to his body. The cause of death was stab wounds to the torso, and the manner of death was ruled a homicide. These findings were made to a reasonable degree of medical certainty.

On January 27, 2021, Appellant entered a non-negotiated guilty plea to one (1) count of third-degree murder, one (1) count of conspiracy to commit murder, one (1) count of … [PIC], one (1) count of … [REAP], one (1) count of tampering with evidence, and one (1) count of obstruction of justice. On May 12, 2021, this court sentenced Appellant to an aggregate term of 26½-53 years['] confinement: 12-24 years of incarceration on the third-degree murder charge, to run consecutively to 12-24 years of incarceration for the conspiracy charge, to run consecutively to 2½-5 years of incarceration for the PIC charge. No further penalty

was imposed on the REAP, tampering with evidence, and obstruction of justice charges. This court also ordered Appellant to pay restitution in the amount $590.00.

On May 18, 2021, Appellant filed a post-sentence motion for reconsideration of sentence. On June 23, 2021, this court denied the motion. On May 9, 2022, Appellant filed a Post[]Conviction Relief Act petition ("PCRA").[1] On January 31, 2023, Appellant filed an amended PCRA[ petition]. On July 18, 2023, Appellant filed a supplement to his amended PCRA[ petition]. On July 19, 2023, Judge Scott DiClaudio granted Appellant's PCRA[ petition], and his direct appeal rights were re-instated by agreement between Appellant and the Commonwealth.

Subsequently, on August 9, 2023, Appellant timely filed a notice of appeal. On August 24, 2023, this court issued an order pursuant to Pa.R.A.P. 1925(b) for counsel to file a statement of errors within 21 days. On September 14, 2023, counsel timely filed a statement of matters complained of on appeal. This opinion followed.

Trial Court Opinion (TCO), 10/5/23, at 1-3 (footnote and unnecessary capitalization omitted).

Herein, Appellant states one issue for our review:

Whether the trial court erred and abused its discretion, when it sentenced Appellant … to a term of incarceration, which was manifestly excessive and unreasonable, as the sentences imposed for … murder – third degree and … criminal conspiracy … were in the standard range of the Pennsylvania Sentencing Guidelines, and the sentence imposed for … [PIC] was above the aggravated range of the Pennsylvania Sentencing Guidelines, and all of these sentences were ordered to run consecutive to each other, despite the fact that there was a considerable amount of mitigation presented at sentencing?

Appellant's Brief at 4 (unnecessary capitalization and emphasis omitted).

Appellant challenges the discretionary aspects of his sentence.

---

[1] *See* 42 Pa.C.S. §§ 9541-9546.

- 3 -

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant timely appealed after the court reinstated his appellate rights, and he preserved his sentencing claims in a post-sentence motion. Appellant also sets forth a Rule 2119(f) statement in his appellate brief. Thus,

we will determine whether the claims raised therein constitute substantial questions for our review.

In his Rule 2119(f) statement, Appellant first acknowledges that he received sentences in the standard guideline range for third-degree murder and conspiracy to commit murder and, therefore, he must show that the sentences are clearly unreasonable. **See** Appellant's Brief at 14 (citing 42 Pa.C.S. § 9781(c)(2) (stating we shall vacate a sentence if we find that "the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable")). Appellant also points out that he received an above-aggravated-range sentence for his PIC offense, thereby requiring him to show that his sentence is unreasonable to warrant our vacating it. **See id.** (citing 42 Pa.C.S. § 9781(c)(3) (stating we shall vacate a sentence if we find that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable")). Appellant insists that here, his sentences are clearly unreasonable and/or unreasonable because the court failed to take into account "the considerable amount of mitigation presented on behalf of" Appellant. **Id.** Appellant also contends that the court's sentence is "not consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community[,] and the rehabilitative needs of" Appellant. **Id.** at 15 (citing 42 Pa.C.S. § 9721(b) (directing that, in imposing a sentence, "the court shall follow the general principle that the sentence imposed should call for total confinement that is

consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant")). Finally, Appellant avers that the court's imposition of consecutive sentences resulted in a "lengthy aggregate sentence" that he will not complete until "he is approximately 80 years old...." *Id.* at 15, 16. Thus, Appellant insists that the imposition of consecutive terms resulted in an excessive aggregate sentence.

Initially, we will not consider Appellant's assertion that the court failed to consider the section 9721(b) factors. This claim was not raised in Appellant's Rule 1925(b) statement and, therefore, it is waived. ***See*** Pa.R.A.P. 1925(b) Statement, 9/14/23, at 1 (stating the following, single issue: "1. Whether the Trial Court erred and abused its discretion, when it sentenced Appellant Victor Yan, to a term of incarceration, which was manifestly excessive and unreasonable, as the sentences imposed for (F1) Murder – Third Degree and (F1) Criminal Conspiracy (to commit Murder – Third Degree), were in the standard range of the Pennsylvania Sentencing Guidelines, and the sentence imposed for (M1) [PIC], was above the aggravated range of the Pennsylvania Sentencing Guidelines, and all of these sentences were ordered to run consecutive to each other, despite the fact that there was a considerable amount of mitigation presented at sentencing?") (emphasis omitted); ***see also*** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are

waived."); Pa.R.A.P 1925(b) Order, 8/24/23, at 1 (unnumbered) (warning that "failure to include an issue in the 1925(b) statement shall result in the waiver of any issue not preserved in accordance with [R]ule 1925(b)"); ***see also Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.***, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (citations omitted; some brackets added).

In regard to Appellant's claims that the court imposed a manifestly excessive sentence by failing to consider mitigating factors and running his sentences consecutively, we conclude that he has raised a substantial question for our review. ***See Commonwealth v. Swope***, 123 A.3d 333, 339 (Pa. Super. 2015) ("This Court has … held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citations and quotation marks omitted); ***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa. Super. 2013) ("[A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence[.]") (emphasis omitted). Thus, we will consider the merits of his arguments, mindful that:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Here, Appellant argues that the court imposed an excessive sentence in light of the mitigating circumstances in his case, such as the fact that he took responsibility for his actions and spared the victim's family "the pain of sitting through a trial" by pleading guilty. Appellant's Brief at 24. Appellant also claims that character letters submitted on his behalf showed that he "is a loving father, friend[,] and family member." ***Id.*** Additionally, Appellant claims he "does not have a long history of prior criminal conduct or violence, … he is willing to abide by all rules set by the Philadelphia Prison System," and he "was intoxicated on the night of the incident, but has never attended drug or alcohol treatment." ***Id.*** (emphasis omitted). Appellant further stresses that he "suffers from bipolar disorder," but "has never been treated for this illness." ***Id.*** According to Appellant, these mitigating factors warranted a lesser sentence.

Appellant's arguments are unconvincing. First, it is clear that the trial court considered the mitigating factors cited by Appellant. As the court explains in its opinion,

> [h]ere, defense counsel introduced, and this [c]ourt considered, a broad range of evidence, including a pre-sentence report and a

mental health evaluation.[2]  Evidence also included letters of support, victim impact statements, sentencing memoranda from both the Commonwealth and Appellant, and a report from Appellant's mitigation specialist.  Further evidence considered included the fact that Appellant waived his preliminary hearing and entered a guilty plea, thereby accepting responsibility for his actions and sparing the Commonwealth and the decedent's family from sitting through a trial.  Finally, this [c]ourt elicited testimony from decedent's family and friends and Appellant's mother, as well as Appellant's allocution testimony.

> [2] [The s]entencing [c]ourt received a pre-sentence investigation report on March 30, 2021[,] and a mental health evaluation on April 28, 2021.

This Court explicitly enumerated on the record the documentation that it received and reviewed prior to announcing Appellant's sentence.  N.T.[,] 05/12/2021, [at] 4….  This [c]ourt also asked both counsel if any additions or corrections were needed to the pre-sentence report.  [*Id.*]  Defense counsel objected to portions of the pre-sentence report that referenced Appellant's prior juvenile arrests, conviction, and violation of probation.  [*Id.*]  This [c]ourt explicitly enumerated that, in determining Appellant's sentence, it would not consider his prior juvenile arrests, but that it would consider his prior adult conviction and violation of probation.  [*Id.* at] 5….  Finally, this [c]ourt carefully listened to testimony from decedent's family and friends and Appellant's mother, as well as Appellant's allocution.  [*Id.* at] 17…[,] 43…[,] 46….  As a result, this [c]ourt sufficiently fulfilled its requirement in acknowledging presented evidence, thus forming the [c]ourt's reasoning for imposing the sentence.

TCO at 8-9.

It is apparent that the court considered the mitigating factors cited by Appellant herein, and that his true complaint is that the court did not **weigh** those factors as he wished.  It is well-settled that "the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within the court's exclusive domain." **Commonwealth v. Velez**, 273 A.3d 6, 10 (Pa. Super. 2022), *appeal denied*, 283 A.3d 792 (Pa. 2022) (citation

omitted); ***see also Moury***, 992 A.2d at 175 ("That the court refused to weigh the proposed mitigating factors as [the a]ppellant wished, absent more, does not raise a substantial question."). Moreover, the trial court had, and considered, a presentence report and a mental health evaluation; thus, "it is presumed the court was aware of and weighed all relevant information contained in the report along with any mitigating sentencing factors." ***Velez***, 273 A.3d at 10 (cleaned up). The court also heard extensive testimony and argument detailing the mitigating factors cited by Appellant. ***See*** N.T., 5/12/21, at 37-42.

Ultimately, the court had to balance those mitigating factors against the circumstances of the case, and the gravity of Appellant's offenses in relation to the impact on the victim and the community. Regarding these considerations, the trial court heard lengthy statements from the victim's father, mother, and the victim's girlfriend, who was present during the attack that led to the victim's death. Each of these individuals offered vivid and heartbreaking descriptions of the devasting impact that Appellant's actions had on their lives. ***See*** N.T. at 17-25 (the victim's father's statement to the court); 26-30 (the victim's girlfriend's statement to the court); 31-36 (the victim's mother's statement to the court).

Ultimately, the court imposed standard-range sentences for Appellant's murder and conspiracy crimes. He has not demonstrated that those sentences are clearly unreasonable, even in light of the mitigating factors presented in this case. Additionally, Appellant has not convinced us that his above-

aggravated-range sentence for PIC, or the court's imposition of consecutive sentences, was unreasonable. The court stressed in its opinion that Appellant's crimes were "grotesque[,]" in that he

> repeatedly punched, kicked, and stomped on decedent while he lay on the ground. Appellant then walked away from the fight. But instead of staying away, Appellant returned with a knife, which he used to stab decedent twice in the chest. After stabbing decedent, Appellant disposed of the knife by throwing it into the river. Appellant then fled the state of Pennsylvania and was a fugitive for several months before he was captured.

TCO at 11-12 (citations to the record omitted).

The court also noted that Appellant had two prior convictions, albeit for non-violent offenses, and that he had "violated his probation on his convictions, which resulted in his probation being revoked and his receiving a new probation sentence." *Id.* at 12. In addition, the trial court emphasized that

> the mental health issues raised in the pre-sentence report did not suggest that treatment would prevent future acts of violence. The evaluative summary recommended that, upon Appellant's release from custody, any community supervision should include intensive reporting. The evaluative summary also recommended that supervision include ongoing home visits to verify Appellant's residence and to check for weapons and drugs. Finally, the evaluative summary state[d] that, because of Appellant's long term drug use, which began when he was a teenager, he should submit to frequent urine testing upon his release from custody.

*Id.*

In sum, the court justified its sentencing decision by stressing that "Appellant's malicious act was a blatant disregard for human life[,]" as he made the "conscious decision to introduce a knife into a fistfight, after briefly

leaving the fight….” *Id.* at 13. Accordingly, “after careful consideration and review of the totality of the circumstances,” the trial court “imposed a sentence consummate with not only the nature of the crime, but one that is also consistent with protecting the public and in the interest of fairness to Appellant.” *Id.* We discern no abuse of discretion in the court's sentencing decision.[2]

Judgment of sentence affirmed.

---

[2] We note that Appellant also specifically contends that the court abused its sentencing discretion by imposing consecutive sentences because his aggregate, maximum term of 53 years is effectively a life sentence, and an abuse of discretion under this Court's decision in *Commonwealth v. Coulverson*, 34 A.3d 135, 148 (Pa. Super. 2011) (holding that “[a] sentence may still be excessive regardless of the commencement of terms of imprisonment in the standard guideline range if the upper end of the sentence imposes a term unlikely to end during the decedent's natural life span”). However, Appellant did not specifically raise this claim in his Rule 1925(b) statement and, thus, the trial court did not address it in its opinion. Consequently, we deem this argument waived.

Nevertheless, even if not waived, we would conclude that Appellant's case is distinguishable from *Coulverson*. There, we found Coulverson's 90–year maximum sentence was “clearly unreasonable” and improperly based on the trial court's determination that Coulverson “should spend as much of his life in prison as the court could order, notwithstanding the tragedy and dysfunction underlying Coulverson's own life….” *Id.* Unlike *Coulverson*, here, there is no indication that Appellant's sentence was based on retribution, or that the court sentenced him with a “fixed purpose of keeping [Appellant] in jail for life.” *Id.* at 149 n.3. Thus, Appellant's reliance on *Coulverson* is misplaced, and we would conclude that no relief is due, even had he preserved this specific claim for our review.

- 12 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/2/2024